IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY H.,[1] | ) |
|       Plaintiff, | ) ) ) No. 20 C 5354 |
| v. | ) ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Maria Valdez ) ) |
|       Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Larry H.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 16] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 21] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On December 21, 2017, Plaintiff filed a claim for DIB, alleging disability since November 18, 2014. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 16, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On October 1, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of November 18, 2014 through his date last insured of December 31, 2015. At step two, the ALJ concluded that Plaintiff had the following severe impairments: two lumbar surgeries; cervical fusions; dysfunction of a major joint (knee); and nerve damage.

2

The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: can frequently climb stairs and ramps; can occasionally climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can engage in frequent neck flexion; can engage in frequent bilateral pushing or pulling with the lower extremities; and can engage in frequent bilateral feeling with the upper extremities. At step four, the ALJ concluded that, through the date last insured, the claimant was capable of performing his past relevant work as a maintenance supervisor, leading to a finding that – from November 18, 2014 to December 31, 2015 – Plaintiff was not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

3

enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.   JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not

high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to

5

fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred by not mentioning a treating source opinion in the record from Plaintiff's pain medicine specialist; (2) the ALJ improperly rejected the opinion of Plaintiff's treating orthopedic surgeon; and (3) the ALJ's RFC assessment failed to account for all of Plaintiff's limitations in combination, including his obesity. Each argument will be addressed below in turn.

#### A. Dr. John Gashkoff's March 2018 Letter

Plaintiff contends that the ALJ erred by not considering purported opinions set forth in a March 2018 letter authored by his pain specialist, Dr. John Gashkoff. Dr. Gashkoff's letter stated as follows:

> This letter is intended to represent my patient, Larry Horstmann, who is under my care for chronic intractable low back pain radiating into his legs. He has a complicated history which began after a work-related injury 3 years ago. He has been unable to work since his injury as head

6

>of maintenance at Lexington Health Care. He has had 2 lumbar surgeries. The first surgery in January of 2017 after which he awoke from surgery and worst pain [sic]. He had another operation in April of 2017, which resulted in an L3-4 and L4-L5 lumbar fusion with posterior instrumentation which again did not help his pain. He was trialed on multiple neuropathic agents and either was unable to tolerate or were [sic] not effective for him. He has had epidural steroid injections both before and after his surgeries which were not effective. He has an MRI of his lumbar spine which reveals the previously mentioned posterior lumbar fusions with instrumentation at L3-4 and L4-L5 with scar tissue in multiple areas along the lumbar canal and nerve roots. He was recently reevaluated by his spine surgeon who did not feel additional surgical reexploration in the lumbar region would be of benefit for his pain symptoms. Given the chronicity and severity of his symptoms and the fact that he did not respond to any conservative therapies nor injection therapy, I have recommended a spinal cord stimulator trial for Mr. Horstmann. I spent a significant amount of time discussing the procedure as well as the potential risks with the patient. All of his questions were answered. He would like to proceed with the spinal cord stimulator trial.

(R. 2755.)

Per this recitation, the problem with Plaintiff's first argument is that Dr. Gashkoff's letter does not actually set forth any "opinions." In the Social Security context, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Dr. Gashkoff's letter does not specifically speak to any of Plaintiff's functional abilities or inabilities, but rather, for the most part, merely recounts factual information that is contained elsewhere in the record. As Defendant points out, "Dr. Gashkoff did not offer an opinion regarding how long plaintiff could stand or walk, how much plaintiff could lift, how effectively plaintiff could concentrate, or on any other matter that would have aided the ALJ in evaluating the extent of

7

plaintiff's functional limitations." (Def.'s Memo. at 7.) Under the circumstances, the ALJ did not err by not mentioning Dr. Gashkoff's letter. *See Sara E. v. Kijakazi*, No. 20 C 03895, 2022 WL 4182404, at *4 (N.D. Ill. Sept. 13, 2022) ("[T]his statement is not a 'medical opinion' that the ALJ was required to evaluate under the operative regulations. . . . The identified note contains only symptoms and diagnoses.") (citations omitted); *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *9 (N.D. Ill. Feb. 29, 2016) ("[T]he HPI merely reflects the patient's subjective statements about he problem for which she is seeking care and a history of that problem, if any. . . . Accordingly, this portion of the note is not an 'opinion' of Dr. Khattak and the ALJ would have been incorrect to consider it as one.").

### B. Dr. Matthew Colman's October 2018 Pain Report

Plaintiff argues that the ALJ improperly discounted the opinions of his treating orthopedic surgeon, Dr. Matthew Colman. Because Plaintiff filed his claim on December 21, 2017, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability,

8

consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In this case, the ALJ assessed Dr. Colman's checkbox "Pain Report" as follows:

> The October 2018 medical source statement submitted by Matthew Coleman, M.D. [sic] indicated treatment of the claimant since November 24, 2014. No other tests were identified to support analysis in file or on attorney's form. Dr. Coleman [sic] reports ongoing neck and back pain due to spinal stenosis. However, this was not persuasive and not consistent with the evidence of record. His MRI showed no severe stenosis. His treatment records show claimant improved with surgery and physical therapy. He had good range of motion, normal motor strength, and comfortable gait. He had no neurological deficits.

(R. 179-80 (citations omitted).) So, in sum, the ALJ discounted Dr. Colman's report because it was not supported by testing and was inconsistent with the medical evidence of record. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Colman's October 2018 report. *See* 20 C.F.R. § 404.1520c(b)(2). Plaintiff is demonstrably wrong that "[t]he ALJ's rejection of the opinion of Plaintiff's treating

9

orthopedic surgeon is unsupported and unexplained." (Pl.'s Memo. at 10.) The Court declines Plaintiff's invitation to reweigh the evidence in relation to Dr. Colman's opinions, which is forbidden. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).[3]

### C. Plaintiff's Impairments in Combination

In advancing his third argument, Plaintiff primarily contends that the ALJ inadequately evaluated the effect his obesity has on his other impairments. In her decision, the ALJ noted that "[t]he claimant has obesity" and he "was 6 feet 3 inches tall and weighed 244 pounds with a body mass index (BMI) of 30.5." (R. 175.) However, in finding Plaintiff's obesity to be a nonsevere impairment, the ALJ explained that "[t]here was no evidence of any associated work-related functional limitations" arising from obesity. (*Id.*) The ALJ also reasoned that "[a]lthough the claimant is obese, he is able to perform activities of daily living and has good range of motion." (*Id.* at 176.)

Plaintiff challenges the ALJ's obesity analysis by broadly asserting that "the ALJ did not address how Plaintiff's obesity interacted with his other impairments." (Pl.'s Memo. at 14.) As an initial matter, the ALJ did expressly consider Plaintiff's

---

[3] Plaintiff argues that the ALJ's analysis was deficient because some of the physical improvement the ALJ discussed in her analysis of Dr. Colman's opinion occurred after Plaintiff's date last insured. However, as Defendant points out, "Dr. Colman's opinion was *also* dated nearly three years after plaintiff's date last insured and did not specify what time frame the opinion applied to, although all questions were asked and answered in the present tense." (Def.'s Memo. at 5.) Accordingly, the Court agrees with Defendant that "evaluating the consistency of a 2018 opinion with contemporaneous treatment records was a logical step for the ALJ to take when considering the persuasiveness of Dr. Colman's opinion." (*Id.*)

10

obesity. Furthermore, the problem for Plaintiff is that he does not specifically explain, beyond generalizations, how his obesity impacts his other alleged physical impairments. A claimant's challenge to the ALJ's assessment of obesity fails where the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). The claimant must "explain how her obesity exacerbated her underlying impairments." *Id*. Here, Plaintiff fails to cite to any meaningful evidence in the record and does not sufficiently explain how his obesity exacerbated his other impairments.

Under the circumstances, the Court finds Plaintiff's argument concerning obesity to be unavailing. *See Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for her obesity lacks merit. Notably, other than general speculations that morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized."). As to Plaintiff's other arguments that the ALJ did not sufficiently consider his impairments together in combination (including Plaintiff's prior elbow surgeries and rotator cuff repairs), the Court finds that the assertions fail as they amount to an impermissible request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*,

11

No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence.").

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 16] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 21] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** **September 28, 2022**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**